528 A.2d 1042

Statesman Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued May 21, 1987, before Judges MACPHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Fredric E. Orlansky, Jones, Gregg, Creehan & Gerace,* for petitioner.

*James A.M. Zarrella,* Assistant Counsel, with him, *Linda Wells,* Chief of Litigation, and *M. Hannah Leavitt,* Chief Counsel, for respondent, Insurance Department.

*James A. Dattilo, Barry, Dattilo & Fasulo,* for respondents, Raymond & Elaine Johnson.

OPINION BY JUDGE COLINS, July 16, 1987:

Statesman Insurance Company appeals an order of the Insurance Commissioner directing reinstatement of a homeowners' insurance policy issued to Raymond and Elaine Johnson.

The Johnsons own a one-story ranch-type house without a basement, the floors of which are concrete slab. There is a hot water heating system utilizing copper pipes beneath or within the concrete floor. Al-

though the policy in question does not cover repairs or replacement of the plumbing or heating system, it does cover repairs and replacement of the concrete surrounding the pipes. Since 1974, the Johnsons filed four claims on their policy, three of which concerned damage from leaks in their heating system in 1978, 1982 and 1983. After the first claim was made, Statesman hired an engineer to examine the heating system. The engineer concluded that the system was inadequate and unfeasible and recommended that it should be replaced. Following receipt of the engineer's report, Statesman unsuccessfully sought to non-renew the policy on the basis that there had been an increase in the policy's hazard, and it subsequently authorized funds to repair and replace the concrete surrounding the leaking pipes after it received notice of the 1978 and 1982 claims. In December 1983, the Johnsons made a claim for additional leaks in the heating system, and Statesman paid for some, but not all, of the claims arising from the work attributable to the repair of the leaks.

Following the 1983 claim, the Johnsons, pursuant to Statesman's instructions, began to compile and present Statesman with estimates, bids and recommendations concerning the system prepared by engineers and contractors. In September 1984, the Johnsons' engineer suggested that they should pursue alternate methods to solve the heating system's problems, and it was later recommended that the concrete-encased pipe system should be abandoned or completely reinstalled, the estimated cost being $40,000, exclusive of dislocation, storage and related expenses. Pursuant to further instructions by Statesman's claims supervisor, the Johnsons obtained another contractor's estimate in the amount of $16,000 for removal of the concrete floor and repair of the leaks in six rooms of the house. As late as April 30, 1985, the Johnsons were still receiving es-

timates from companies whose evaluations had been authorized by Statesman.

In May, 1985, Statesman hired a claims adjuster, who informed the Johnsons that they no longer had an insurable, fortuitous loss, and who requested them to submit cost estimates for repair and replacement of interior walls and floors and related temporary dislocation expenses. Such estimates were sought in order to assist him in the claims adjustment process. The Johnsons were confused as to whether the requested estimates were for cost of repairs or replacement of the heating system, but the adjuster failed to respond to their requests for clarification. In June 1985, Mrs. Johnson asked Statesman's claims vice-president for specifics as to what type of estimates she was to obtain. He then informed her that he could not authorize repair of more existing leaks, explaining to her that they would only break out again.

In July 1985, Statesman sent the Johnsons a Notice of Non-renewal, which set forth as the reason for termination an "[i]ncrease in hazard due to failure to repair or replace heating system in home."

Section 5(a)(9) of the Unfair Insurance Practices Act prohibits the cancellation of residential property insurance "unless there has been a substantial change or increase in . . . the risk assumed . . . subsequent to the date the policy was issued; *or* there is a substantial increase in hazards insured against *by reason of willful or negligent acts or omissions by the insured.*" (Emphasis added.) 40 P.S. §1171.5(a)(9).

The Insurance Commissioner determined that Statesman's non-renewal notice indicated that the basis of its decision not to renew the policy was its belief that the Johnsons' acts or omissions resulted in an increase in hazards covered by the policy. Such a reason is, of course, a legitimate basis for cancellation or non-renewal

as provided by the second clause of the above-quoted portion of Section 5(a)(9). The Commissioner found, however, that there was no hazard increase due to the Johnsons' willful or negligent action, since they were not told that they had a duty to independently repair or replace the system prior to June 1985. He determined that the Johnsons were not reasonably expected to take curative actions in the brief time between notice of their duty and the notice of cancellation. Statesman's cancellation notice set forth as the reason for cancellation an increase in risk attributable to the Johnsons' conduct, but inasmuch as no increase in the risk was attributable to such conduct, Statesman was held to the specific reason set forth in its notice and was not permitted to cancel.

Statesman contends that its Notice of Non-renewal was adequate for purposes of the Act, arguing that the notice subsumed both statutory criteria for termination, *i.e.,* increased risk *and* an increase in hazards attributable to conduct of the insureds.

The Act clearly delineates two separate bases for non-renewal set forth in distinct clauses within the statute. The Commissioner determined that, although Statesman could have used either or both of the reasons permitted by the statute, it chose to supply only the second, more specific of the two reasons as the stated basis for its decision not to renew the Johnsons' policy. It could have used both. Inasmuch as such provisions are to be strictly construed in favor of the insured, and against the party providing the notice, the Commissioner correctly held Statesman to the reason it gave as the basis for non-renewal. There is no impediment, of course, to Statesman issuing another notice relying upon the increase in risk. Moreover, if the Johnsons still failed to take remedial action within a reasonable time after being apprised of their duty to do so, they could

be cancelled for the risk increase attributable to their conduct.

Statesman also contends that substantial evidence was not adduced to support the conclusion that the Johnsons' duty to repair or replace the system first arose only in June 1985. It argues that Mrs. Johnson testified that she and her husband became aware of the necessity of replacing the heating system between May 1984 and January 1985. Although the Johnsons may have received notice of the deteriorating condition of their system by January 1985, they were not placed under a *duty* to replace the system prior to June, 1985, when Statesman informed them that it would not honor their 1983 claim and would not honor future claims because the system should be replaced. Our review of the record reveals that there is substantial evidence in the record to support this finding, and we therefore reject Statesman's argument in this respect.

Statesman also argues that substantial evidence was not produced to support two findings supporting that conclusion. One such finding provides that Statesman's claims adjuster told the Johnsons in May 1985 that they no longer had an insured, fortuitous loss. Statesman maintains that testimony of its claims adjuster indicates that he did not specifically tell the Johnsons that their claim was no longer insurable as not fortuitous. Statesman concedes that the Commissioner accepted as credible the contrary testimony of Mrs. Johnson, but it maintains that the Commissioner erred in giving such testimony the weight he did in using it as the basis of the finding in question.

We believe, however, that the finding is based upon substantial evidence inasmuch as the Commissioner's acceptance and weighting of such testimony is a matter within his exclusive province as the finder of fact and is not a matter subject to review by this Court.

Statesman similarly challenges the finding that, in early June, 1985, Mrs. Johnson asked Statesman's vice-president of claims for specifics as to the types of estimates she should obtain, and that he then informed her that he was not authorized to repair any more leaks. Once again, however, Statesman concedes that conflicting testimony was offered concerning this factual issue, and that testimony supporting the finding was given by Mrs. Johnson. We must conclude, therefore, that this finding is also supported by substantial evidence.

We will, therefore, affirm the order of the Insurance Commissioner.

### ORDER

AND NOW, this 16th day of July, 1987, the order of the Insurance Commissioner in the above-captioned matter is hereby affirmed.