541 A.2d 1130

**Helen BALAZICK, Appellee,**

v.

**Lois B. IRETON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1988.

Decided May 20, 1988.

128

George B. Stegenga, Mark F. Geary, Washington, Pa., for appellant.

William R. Nalitz, Waynesburg, Pa., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1980 Helen Balazick and her husband Charles created five joint accounts with the First National Bank of Wheeling in the face amount of $54,000 each. Each of these accounts, which took the form of repurchase agreements, was titled jointly in the names of one of the parents and one of their five children, with a different child's name appearing on each certificate with one of the parents.[1]

The agreements were titled as follows:

| NAME | AMOUNT |
|---|---|
| 1. Charles Balazick or Charles J. Balazick | $54,000 |
| 2. Charles Balazick or Theresa Albert | $54,000 |
| 3. Charles Balazick or Edith Bunting | $54,000 |
| 4. Helen Balazick or Lois Ireton | $54,000 |
| 5. Helen Balazick or Rose Alcorn | $54,000 |

Except for a small sum of money contributed to make each of the certificates of equal amount, the money used to create these five repurchase agreements came from the accumulated savings of Helen and Charles Balazick which had previously been held in various accounts titled as tenants by the entireties.

The reason for creating the five accounts listed above was to provide a scheme whereby the Balazicks' children could inherit equal shares of cash at the death of their parents without going through probate. As the trial court found, however, the purpose in creating these accounts was also to afford the parents control over the funds during their lifetimes:

1. A repurchase agreement is an arrangement in which the bank purchases government securities and sells interests in these securities to individual customers. The agreement between the customer and the bank is that the bank will repurchase the customer's interest at the end of a negotiated period of time at a negotiated rate of interest.

Ownership of the securities is not transferred to the customer, and the bank does not create a deposit contract. Instead, the bank issues a receipt indicating the ownership of the interest which has been created, the amount, the interest to be paid, and the term of the agreement. N.T. 41, May 14, 1985.

The plaintiff and her husband desired to control the funds during their lifetimes in order to be able to use the interest from them, if they so desired, or any amount of the principal, with the unused portion to pass to the children as planned.

When Charles Balazick died in November of 1982, the three agreements in the joint names of Charles Balazick or Charles J. Balazick, Charles Balazick or Theresa Albert, and Charles Balazick or Edith Bunting passed to the surviving children. The agreements in the names of Helen Balazick or Lois Ireton and Helen Balazick or Rose Alcorn remained in the possession of Helen Balazick.

After the death of her father, Lois Ireton became concerned that she might not inherit the money contained in the repurchase agreement titled in her name and her mother's. Although Lois testified that her father had told her the money in the joint account with her mother was hers, N.T. 51, her mother indicated to her that she might never get the money in the account, N.T. 50. Subsequently, in March, 1983, Lois Ireton unilaterally removed from her mother's desk the agreement bearing her name and that of her mother. She then drove to Wheeling, West Virginia, where she presented the agreement to the First National Bank of Wheeling and requested that the bank allow her to withdraw $5,000 and reissue the agreement in her name alone. The agreement at that time was worth $72,966.59. The bank complied, and subsequently, she withdrew the entire amount remaining and placed it in other accounts which were under her exclusive control. When Helen Balazick discovered that the agreement had been taken, she demanded its return. Her daughter refused, and Helen Balazick brought an action in equity in the Greene County Court of Common Pleas to compel the return of the funds plus interest.

The trial court found as fact that

[Lois Ireton] acknowledged that she did not own the Repo [repossession agreement] nor was she entitled to the interest therefrom without the consent of the plaintiff

[Helen Balazick], but converted the certificate in her own name in order to protect her interest in the certificate from being dissipated by the plaintiff for the benefit of other members of the family.

The trial court also found as fact:

There is no disagreement between the parties that the plaintiff [Helen Balazick] has the right to invade the principal, if that is necessary, for her maintenance and support, nor is there any disagreement that she has an absolute right to the entire interest during her lifetime, with the balance of the principal and unclaimed interest to pass to the defendant upon the death of the plaintiff.

The removal of the certificate from the possession of the plaintiff was illegal and without authorization, and the conversion of the Repo solely in the name of the defendant, and the withdrawal of the $5,000 was also illegal and without authorization.

In spite of its finding that Lois Ireton had illegally converted funds belonging to her mother, the trial court ordered Lois Ireton to return the money in question to her mother, but imposed a trust on the funds as follows:

Lois B. Ireton is directed to account to this Court forthwith for the principal sum of $72,966.59, and all interest earned or that could have been earned therefrom, within thirty days of the date of this order, and shall surrender said sum to the plaintiff to be reinvested in a Repo, or other type of investment, in the names of Helen Balazick or Lois B. Ireton in an amount not less than $72,966.59.

The plaintiff, Helen Balazick, may utilize any or all of the interest earned by the certificate for her own personal use, *but shall not invade the principal without order of this Court.*

(Emphasis added.) The trial court's rationale was that Helen Balazick and her husband had entered into an agreement to distribute their assets equally among the children while retaining control of the repurchase agreements during their lifetimes, that this agreement had been partly executed at the time of the husband's death, and that it

would be inequitable to "vary the terms of the agreement by changing the status quo after the death of the husband."

Helen Balazick appealed from the trial court's final decree, and on August 15, 1986, Superior Court reversed that part of the trial court's order which imposed a constructive trust on the principal amount of the repurchase agreement, 357 Pa.Super. 68, 515 A.2d 562. Superior Court's rationale was that the mere presence of both names on the repurchase agreement did not establish a joint tenancy, that there was no gift over to Lois Ireton, and that Lois Ireton, therefore, had no present interest in the funds of the repurchase agreement. Moreover, the court held that there was no basis in the record for the imposition of a constructive trust. As Superior Court put it:

Before a constructive trust can arise, ... it is necessary that the owner of the property must have acquired title to it in some way that creates the equitable duty in favor of the person who would benefit from the trust. *Pierro v. Pierro*, 438 Pa. 119, 264 A.2d 692 (1970). This is not the case here. The funds originally belonged solely to appellant. None of the funds ever belonged to the appellee and the appellee has no interest in the funds. The most appellee ever had was an expectation that, if appellant had not used the funds during her lifetime, appellee would receive them at appellant's death. Appellant has neither a legal nor an equitable duty to preserve the funds for the benefit [of] appellee.

Our analysis of this case begins with consideration of the Probate, Estates and Fiduciaries Code, which defines "account" and "joint account" as follows:

Account means a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, saving account, certificate of deposit, share account and other like arrangements.

Joint account means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship.

20 Pa.C.S. § 6301. Thus, contrary to the determination of Superior Court, since the repurchase agreement in question was not unlike a share account or certificate of deposit and was titled in the names of Lois Ireton or Helen Balazick, it was a joint account.

█ Ownership of joint accounts is treated in the Probate, Estates and Fiduciaries Code as follows:

A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

20 Pa.C.S. § 6303. Thus, unless there is clear and convincing evidence to the contrary, when both parties to a joint account are living, the account belongs to the parties in proportion to their contributions. Since Lois Ireton contributed nothing to this account, and since Helen Balazick contributed everything in the account by using the proceeds from earlier accounts which she had owned by the entireties with her deceased husband, unless there is clear and convincing evidence to the contrary, Lois Ireton has no present interest in the account.[2]

█ The only relevant evidence to the contrary is Lois Ireton's testimony that her father told her the money was hers and evidence that her father and mother's joint purpose in creating these accounts was to provide for their own needs and avoid probate. However, taking this evidence at

---

**2.** As to the claim that Helen Balazick did not contribute to the joint account because she did not earn the money which was previously held by the entireties, Helen Balazick worked in the family business which produced the entireties property, and in any event, she was the presumed owner of any property transferred to her by her husband:

In *Butler v. Butler,* 464 Pa. 522, 347 A.2d 477 (1975), we held that in light of the passage of the Pennsylvania Equal Rights Amendment, Pa. Const. Art. I, § 28 (adopted May 18, 1971), a contribution to entireties property by either husband or wife must be presumed a gift to the other. Since *Butler* merely states that the presumption of gift, previously applied only to transfers by the husband, must be applied equally to transfers by either party, it contains nothing to disturb the established presumption of gift in cases where, as here, the transfer was from the entireties estate to the wife alone.

*Stauffer v. Stauffer,* 465 Pa. 558, 568 n. 2, 351 A.2d 236 (1976).

its face value, it is not clear and convincing evidence that Lois Ireton has a present interest in the account. It was not the parents' intent to create joint accounts with their children which the children could then usurp, regardless of the wishes or needs of the parents. On the contrary, it was the parents' intent to create an instrument which would be immediately accessible for their needs in their old age, and to give what remained, if anything, to the child also named on the various accounts. Presumably, Charles Balazick imagined that the money in these accounts would not be disturbed, and thus, each child would ultimately take an equal amount. This is not, however, clear and convincing evidence that Lois Ireton should take a present ownership interest in the account, for her father's wish to provide equally for the children is not inconsistent with his purpose of controlling the money until his or his wife's death, since equal gifts to the children were contingent upon not needing the money for other purposes. Were this not the case, presumably Helen and Charles Balazick would simply have made present gifts of these accounts to the various children.

Since there is no clear and convincing evidence that the joint account belongs both to Helen Balazick and Lois Ireton, our next inquiry must be whether, in these circumstances, a constructive trust may be imposed. This Court has stated the requirements for the imposition of a constructive trust as follows:

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." 5 Scott, Trusts § 462 at 3413 (3d ed. 1967). Restatement, Restitution § 160 (1937); *Chambers v. Chambers*, 406 Pa. 50, 176 A.2d 673 (1962); *Gray v. Leibert*, 357 Pa. 130, 53 A.2d 132 (1947). Although it is not stated clearly in every opinion, one necessary aspect of the defendant's holding title to property is that he must have acquired it in some way that creates the equitable duty in favor of the

plaintiff. In *Chambers v. Chambers*, supra at 54–55 [176 A.2d 673], we quoted from Justice CARDOZO'S opinion in *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380 (1919), where he stated "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee...." ... "They (constructive trusts) arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled...." 4 Pomeroy's Equity Jurisprudence § 1044 at 93 (5th ed. 1941).

*Pierro v. Pierro*, 438 Pa. 119, 127, 264 A.2d 692, 696 (1970). Since there is no clear and convincing evidence, as is required by section 6303 of the Probate, Estates and Fiduciaries Code, that the joint account belongs to both parties; since Helen Balazick would not, therefore, be unjustly enriched if she were permitted to retain possession and control of the joint account; and since Helen Balazick did not acquire title to the account in such circumstances that good conscience requires the court to turn over the account to Helen's daughter, we agree with Superior Court that no constructive trust may be imposed.

As for the trial court's determination that there had been a partially executed agreement to distribute the assets of the estate equally among the children, our view is that any such agreement was precatory. As the trial court found, Helen and Charles Balazick desired to retain control over the funds during their lifetimes, "in order to be able to use the interest from them, if they so desired, or any amount of the principal, with the unused portion to pass to the children as planned." Thus, the trial court itself acknowledged that the parents agreed they would be able to use the principal and the interest from the account as they saw fit, and because of this, as we have discussed pursuant to section 6303 of the Probate, Estates and Fiduciaries Code, the

children named on the joint accounts had no present interest in the accounts during the life of the parents. Both the statute and the agreement itself, therefore, vest ownership and control of the remaining joint accounts in Helen Balazick, and to create a constructive trust on the theory that the equality of distribution agreement between the parents gives Lois Ireton an equitable right to limit her mother's access to the account would be to elevate one aspect of the agreement (equal distribution) over another equally important but potentially conflicting aspect of the agreement (parental control), and to ignore the Probate, Estates and Fiduciaries Code. For these reasons we conclude that the agreement between the parents upon establishing the five joint accounts was precatory in nature.

The order of Superior Court is affirmed.