592 A.2d 678

**William LESSNER, Appellee,**

v.

**Birdie L. RUBINSON, and First Pennsylvania Bank.**

**Appeal of Birdie L. RUBINSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 5, 1990.

Decided June 10, 1991.

Louis S. Criden, Philadelphia, for appellant Rubinson.

Herbert Pressman, Philadelphia, for Lessner.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Judge.

This is an appeal from an order of the Superior Court which reversed in part the trial court's order which held that the deceased, William Lessner, intended to make a gift inter vivos in the amount of fifty thousand dollars ($50,000) to the appellant, Birdie L. Rubinson. 382 Pa.Super. 306, 555 A.2d 193. The Superior Court also affirmed in part the order of the trial court which held that a five thousand dollar ($5,000) payment from the decedent to Ms. Rubinson was a gift and not a loan. The issue presented by this appeal is whether the appellant presented sufficient evidence of her putative grantor's donative intent to establish the existence of a gift.

The facts of this case center upon a long and loving relationship between brother and sister, and that brother's desire to provide for his sister. Throughout their lifetime, William Lessner and his sister Birdie L. Rubinson were very close. Following the death of his wife in April of 1978, Mr. Lessner developed serious health problems. On several occasions, Ms. Rubinson was called upon to care for her ailing brother.

On July 18, 1978, William Lessner brought his sister to his bank [1] in order to have a fifty thousand dollar certificate of deposit ("1978 C.D.") issued in both their names. The 1978 C.D. was issued as a replacement for, and purchased with the proceeds of, a certificate of deposit purchased jointly by Mr. Lessner and his late wife in 1975. When the 1978 C.D. matured on April 1, 1979, Mr. Lessner returned to his bank with his sister in order to "roll-over" the proceeds into a third C.D. ("1979 C.D.") with a four-year term. At no time during the period involved did Ms. Rubinson contribute any money towards the purchase of the certificates in question, nor did she receive any of the interest. Because of Mr. Lessner's poor health, Ms. Rubinson was given custody of the certificates. However, Mr. Lessner's health improved and he requested possession of the certificate for the 1979 C.D. The instant litigation followed Ms. Rubinson's refusal to surrender the certificate to Mr. Lessner.[2] Ms. Rubinson claimed Mr. Lessner made an irrevocable gift to her in the amount of fifty thousand dollars when the certificates were issued in joint account form and entrusted to her custody.

A five thousand dollar payment to Ms. Rubinson is also a source of controversy in this appeal. Mr. Lessner testified that he issued a check in the amount of five thousand dollars to appellant on July 1, 1982, as a loan. Appellant maintained it was not a loan, but a gift.

Following a bench trial, the trial court found, in addition to the preceding facts, that the 1978 and 1979 C.D.'s were issued in an effort to facilitate an inheritance tax-free transfer of money from Mr. Lessner to Ms. Rubinson in the event of his death. However, the trial court found that a gift inter vivos was made by the deceased of both the fifty

---

1. Mr. Lessner's bank was First Pennsylvania Bank which is a named party in this suit, but is not a party to this appeal.

2. Although Mr. Lessner died after commencement of this lawsuit, his executor has now assumed responsibility for the survival action. Consequently, our focus will be limited to an examination of the parties' interests during his lifetime.

thousand dollar certificate[3] and the five thousand dollar payment in 1982. The Superior Court concluded that the trial court erred in finding the certificate was a gift inter vivos because *inter alia,* Ms. Rubinson failed to establish by clear and convincing evidence that Mr. Lessner intended to make an immediate gift. The Superior Court affirmed the trial court's ruling in regard to the five thousand dollar payment, agreeing that donative intent was established.

■ Addressing first the issue of the five thousand dollar payment, appellee contends that Mr. Lessner's claim that the money was a loan was established by corroborative testimony of a witness who had knowledge of Ms. Rubinson's intent to approach her brother with a request for money. Ms. Rubinson, on the other hand, asserts that the payment was just one of many monetary gifts made by her brother during his lifetime. Ms. Rubinson also testified that she routinely cashed checks written by, and at the behest of, Mr. Lessner while she was nursing him back to health.

We do not find as persuasive appellee's argument that testimony corroborating Ms. Rubinson's request for money equates to a request for a loan. The trial court in this matter noted a course of dealing between the parties in which the appellant routinely cashed checks in amounts close to that at issue herein. There was no evidence of a history of loans between the parties. The trial court also noted that Mr. Lessner's testimony "vacillate[d] back and forth as to whether he intended to make a gift or if the money involved was a loan." Slip op. at page 5. As a result, the trial and Superior courts found in Ms. Rubinson's favor. We find no error.

■ Next, we address the more difficult problem of the fifty thousand dollar certificate. Mr. Lessner's executor argues that under 20 Pa.C.S. § 6303, the fact that the account was opened in joint form indicates Mr. Lessner's

**3.** The proceeds of the 1979 C.D. were placed into a money market account at its maturity pending final resolution of this case.

desire to retain control of the fifty thousand dollar C.D. during his lifetime. The crux of appellee's position is that Ms. Rubinson was not to receive any beneficial interest in the certificates until Mr. Lessner's death. Therefore, appellee asserts that since Mr. Lessner had attempted to revoke this arrangement during his lifetime, Ms. Rubinson has no entitlement.

■ Ms. Rubinson's position is that her brother intended to make an immediate gift to her. She asserts that her brother's testimony relating to his desire to provide for her demonstrates the requisite level of donative intent under Pennsylvania law to support the finding of a gift. Ms. Rubinson contends further that Mr. Lessner demonstrated his intent to make the gift an immediate one when he delivered to her possession of the certificates in question. Ms. Rubinson contends that her evidence is clear and convincing and therefore that she is entitled to the funds.

20 Pa.C.S. § 6303 provides, in relevant part:

Ownership during lifetime:

(a) Joint account. A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each of the sum on deposit, unless there is clear and convincing evidence of a different intent.

The official comment to 20 Pa.C.S. § 6303 gives pertinent insight into the instant controversy and provides, in relevant part, as follows: [4]

*This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit.* Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof than [sic] a gift was intended. Read with Section [6302]

4. Official comments are to be given weight in the construction of statutes. 1 Pa.C.S. § 1939; *Young v. Kaye,* 443 Pa. 335, 279 A.2d 759 (1971); *Tarlo's Estate,* 315 Pa. 321, 172 A. 139 (1934); *Miles' Estate,* 272 Pa. 329, 116 A. 300 (1922).

which defines "net contributions," the section permits parties to certain kinds of multiple-party accounts to be as definite, or as indefinite, as they wish in respect to the matter of how beneficial ownership should be apportioned between them. It is important to note that the section is limited to describe ownership of an account while original parties are alive.

\*　　\*　　\*　　\*　　\*　　\*

The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. *That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy.* (Emphasis added).

In determining whether either of the courts below erred in its disposition of the certificate, the threshold issue we must address is whether the appellant showed by clear and convincing evidence that Mr. Lessner intended to make an immediate gift. For the following reasons, we hold that Ms. Rubinson failed to satisfy her burden of proof.

At the outset, we must recognize that the certificates at issue herein were executed in a joint account form after the effective date of 20 Pa.C.S. § 6303 (September 1, 1976), and therefore are subject to that statute.[5] Our plain reading of § 6303 indicates that Ms. Rubinson's entitlement to the proceeds of the 1979 certificate can be established two ways. First, Ms. Rubinson could produce evidence that she

5. It is important to note that *In re Estate of Sipe,* 492 Pa. 125, 422 A.2d 826 (1980); *In re Estate of Gladowski,* 483 Pa. 258, 396 A.2d 631 (1979); *Cost v. Caletri,* 483 Pa. 11, 394 A.2d 513 (1978); *In re Estate of Young,* 480 Pa. 580, 391 A.2d 1037 (1978), are all cases with similar facts and controversies decided by this Court after Chapter 63 was passed. However, Chapter 63 was not applied in these cases because the accounts at issue therein were opened prior to the effective date of the Chapter (September 1, 1976).

contributed *all* of the fifty thousand dollars toward the certificate's purchase. However, the record clearly and unquestionably indicates no such contribution was made.

Second, Ms. Rubinson could produce clear and convincing evidence that Mr. Lessner did not intend to retain his beneficial interest in the funds during his lifetime, but rather that he intended to make a gift. It is upon this point that Ms. Rubinson's case relies. The requirements for making a valid gift through the medium of joint tenancy bank deposits were set forth succinctly in *Hosfeld Estate*, 414 Pa. 602, 605, 202 A.2d 69, 71 (1964), as follows: [6]

(1) the mere fact that money is deposited in the account of the owner and another or the owner or another does not standing alone, prove a gift inter vivos; (2) it is the burden of the claimant to establish the existence of a gift inter vivos by clear, precise, direct and convincing evidence; (3) to constitute a gift inter vivos *there must be shown an intention to make an immediate gift* and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with joint ownership or interest therein.

*Citing Martella Estate*, 390 Pa. 255, 135 A.2d 372 (1957) (emphasis altered).

In order to satisfy the "clear and convincing" standard, [t]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

6. Although the rule of *Hosfeld Estate,* 414 Pa. 602, 202 A.2d 69 (1964) was formulated in contemplation of a joint savings account, it is equally applicable to certificates of deposit. *See e.g., Balazick v. Ireton,* 518 Pa. 127, 541 A.2d 1130 (1980); *In re Estate of Chiara,* 467 Pa. 586, 359 A.2d 756 (1976); 20 Pa.C.S. § 6301.

*In re Estate of Fickert,* 461 Pa. 653, 658, 337 A.2d 592, 594 (1975), *quoting La Rocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).

It is evident that in order to be successful, Ms. Rubinson must first provide sound evidence of her brother's present donative intent. It is in regard to this threshold requirement that Ms. Rubinson's appeal ultimately fails. Our review of the record indicates that the parties had a long and amicable relationship. Mr. Lessner testified about his desire to "leave everything to Birdie." N.T. 2/25/86 at 25–26. It is apparent from Mr. Lessner's testimony that his financial decisions during the latter stages of his life were influenced by his poor health and his desire to provide his sister with financial security in the event of his death. Ms. Rubinson relies heavily upon the fact that she retained possession of the certificate to indicate that an immediate gift was intended.[7] However, we are not persuaded. The record facts refute the inference of an immediate gift. When the 1978 C.D. matured, Mr. Lessner retained sole possession of the interest that had accrued to that point. The fact that he took sole possession of the interest that accumulated is in direct conflict with the assertion that he had intended to relinquish all rights in that certificate at the time of its issuance in 1978. It is fundamental that the interest follows the principal in ownership. Additionally, the certificate of deposit purchased in 1979 was also placed in joint names as the previous certificate had been, which would strongly suggest that no such change in ownership of the principal occurred as asserted by appellant. These undisputed actions weigh heavily against any inference that an immediate gift of the principle was intended in 1978 or 1979. Viewing all of the circumstances together in this case as we are required to do, *In re Sipe's Estate,* 492 Pa.

7. Ms. Rubinson also argues in her brief that Mr. Lessner stated, "This is yours," at the time she took possession of the certificate. However, this statement was stricken from the record by the trial court as hearsay. Ms. Rubinson has not challenged the validity of this evidentiary ruling on appeal; therefore, we are precluded from giving it consideration now. *See* Pa.R.A.P. 302(a).

125, 422 A.2d 826 (1980), we agree with the Superior Court that Ms. Rubinson did not present clear and convincing evidence of her brother's donative intent.

We are satisfied that the certificates were issued in joint names in order to effectuate a cash transfer free of inheritance taxes upon the death of Mr. Lessner. When Ms. Rubinson attempted to retain control of the certificate, Mr. Lessner immediately responded by bringing this action. Such a response is consistent with the view that an inter vivos gift was never intended. Thus, the fifty thousand dollars at issue herein, plus any interest, must be included in the estate of Mr. Lessner.

Accordingly, the order of the Superior Court is affirmed.

LARSEN, J., files a concurring opinion.

LARSEN, Justice.

Although I agree with the majority that there was insufficient evidence of donative intent herein with regard to the $50,000 certificate of deposit, I write separately because I disagree with the majority's assertion that "it is fundamental that the interest follows the principal in ownership." Maj. op. at 682.

In *Estate of Chiara*, 467 Pa. 586, 359 A.2d 756 (1976), the fact that the interest from two savings certificates was received by the decedent during her lifetime did not preclude the Court from holding that ownership of the certificates had passed to the decedent's son as an inter vivos gift. Thus, there is nothing fundamentally correct about the majority's assertion that interest follows the principal in ownership.