IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nazareth Mutual Insurance Company, :
 :
 Petitioner :
 :
 v. : No. 730 C.D. 2022
 : Argued: March 6, 2023
Pennsylvania Insurance Department, :
 :
 Respondent :


BEFORE: HONORABLE MICHAEL H. WOJCIK, Judge
 HONORABLE STACY WALLACE, Judge
 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK      FILED: May 12, 2023


     Nazareth Mutual Insurance Company (Insurer) petitions for review of an order of the Acting Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner) concluding that Insurer's cancellation and nonrenewal of Earl J. Muth's (Intervenor) homeowners' insurance policy (Policy) violated the Unfair Insurance Practices Act (Act)[1] and directing Insurer to cease and desist from terminating the Policy and to reinstate the Policy without any lapse in coverage. Insurer contends that the Commissioner erred in applying the Act to the policy termination, determining that Insurer failed to establish a material

---

[1] Act of July 22, 1974, P.L. 589, No. 205, *as amended*, 40 P.S. §§1171.1-1171.15.

misrepresentation, and finding that Insurer's notice of nonrenewal failed to comply with the Act. Discerning no error, we affirm.

## I. Background

Since May 6, 1998, Intervenor maintained the Policy with Insurer for his home at 6269 Route 309 in New Tripoli, Pennsylvania (Property), which he owned and shared with his wife, Marie Muth (collectively, the Muths). On December 2, 2019, following a fire at the Property, which caused substantial damage to the home, Intervenor submitted an insurance claim.

On April 9, 2020, after an investigation, Insurer denied the claim upon determining that "no coverage exist[ed]" because the Property was placed in an irrevocable trust on March 22, 2010, and no longer met the Policy's definition of "insured premises." Reproduced Record (R.R.) at 121a, 125a.

In a follow up "Cancel Statement" dated April 13, 2020, Insurer informed Intervenor that the Policy was cancelled effective March 22, 2010, for the stated reason: "Dwelling not eligible for coverage." R.R. at 127a. Insurer refunded premium payments made from March 22, 2010, onward.

In April 2020, Intervenor requested the Insurance Department's (Department) Bureau of Consumer Services (Bureau) to investigate the retroactive cancellation and filed a complaint with the Department. On April 29, 2020, Insurer issued another Cancel Statement with a slightly more specific reason: "Dwelling not eligible for coverage due to ownership change." R.R. at 148a.

Following an investigation, the Bureau determined that the Policy termination violated the Act and ordered Insurer to continue the Policy with no lapse in coverage. R.R. at 169a. On June 8, 2020, Insurer appealed.

2

On June 24, 2020, Insurer sent Intervenor a Nonrenewal Notice, advising that the Policy would terminate on July 30, 2020, and would not be renewed because the Property is no longer owner-occupied, but was deeded to a trust in 2010. R.R. at 291a. On July 14, 2020, Intervenor challenged the Nonrenewal Notice. The retroactive termination and prospective nonrenewal matters were consolidated for hearing and review.

At the hearing held November 9, 2021, the Commissioner heard testimony from Richard Sitkus (Sitkus), Insurer's representative in charge of insurance operations, Intervenor, and his wife, Marie Muth. Based on the testimony and other evidence presented, the Commissioner made the following findings.

Insurer acted to terminate Intervenor's Policy twice. Insurer's reason for terminating the Policy was the transfer of the Property into a trust in 2010. With the assistance of a trust company, the Muths created a revocable living trust, known as the Earl J. and Marie E. Muth Family Trust (Trust), in December 2009. The Muths were named as settlors and trustees of the Trust. The Trust was revocable and allowed for all assets to be transferred into and out of the Trust. Within the Trust, the Muths created an irrevocable asset protection sub-trust (sub-trust), which was designed to limit the use of principal for the Muths' benefit and avoid a governmental "spend down" of the estate before eligibility for governmental entitlement programs. At the time the Trust was created, no assets were scheduled as being placed in the sub-trust. Commissioner's Adjudication and Order, 6/17/22, at 9-10.

On March 22, 2010, the Muths signed a "Quit Claim Deed" (Deed) for their Property to their daughter, Michelle Eidle, as trustee, and placed the Property in the Trust's irrevocable sub-trust. The trustee's address was the Property address.

3

Intervenor was informed by the trust company that the transfer of Property would not take place until after the Muths passed away. Their daughter was not aware of the Deed. Intervenor was not aware of the transfer until after the fire loss investigation. Commissioner's Adjudication and Order, at 10.

Per the terms of the sub-trust, the Muths retained ownership of a life estate in the Property as well as special powers of appointment. Although Intervenor and his wife may not have been title owners following execution and recording of the Deed, they retained ownership of important property rights. In addition, the Muths continued to reside at the Property and paid for all utilities, real estate taxes, homeowners' insurance, and all maintenance for the Property. The Property continued as the Muths' primary residence through the time of the hearing. Through the years, Insurer looked to Intervenor for inspections and to make necessary repairs. The Muths continued to act as the occupying owners of the Property. Commissioner's Adjudication and Order, at 10-11.

The Commissioner found that Insurer's termination of the Policy constituted a cancellation and nonrenewal subject to the Act's compliance provisions, not a rescission as asserted by Insurer. Insurer's Cancel Statements failed to comply with the Act's procedural requirements. In addition, the termination substantively violated the Act because the stated reason – "Dwelling not eligible for coverage due to ownership change" – was not a permissible reason to cancel the Policy under the Act. The Act requires material misrepresentation by the insured, a substantial increase in hazard, or nonpayment of a premium to cancel a Policy, none of which were stated on the notices. Thus, the Commissioner found that Insurer's termination was both procedurally and substantively noncompliant with the Act. Commissioner's Adjudication and Order, at 13-15.

4

Notwithstanding the notice defects, the Commissioner found that Insurer failed to prove the existence of material misrepresentation. To prove material misrepresentation, an insurer must prove that (1) the declaration was false; (2) the subject matter of the misrepresentation was material to the risk; and (3) the declarant knew the statement to be false or made the statement in bad faith. The Insurer failed to establish a declaration, relying instead on an implied assertion of ownership. The implied assertion of ownership was not false because the Muths retained a life estate and special powers of appointment. It was not material to the risk. Although Insurer offered evidence that the Property under the Trust would require a more expensive dwelling policy, the Commissioner found that increased cost alone was not sufficient to demonstrate increased risk. Insurer needed to show potential casualty and liability exposure caused by the transfer, such as a vacant or tenant-occupied property. Such was not the case here because the Muths continued to reside at the Property. Lastly, the Commissioner found that Intervenor did not know that any implied representation of ownership was false because he owned a life interest in the Property, maintained special power of appointment over it, and believed the actual transfer would not occur until he and his wife both passed. Commissioner's Adjudication and Order, at 16-24.

As for the nonrenewal, the Commissioner found that, although it satisfied the procedural requirements of the Act, it did not meet the substantive requirements. The reason for nonrenewal stated:

Property No Longer Owner Occupied
The [P]roperty was deeded to a Trust in 2010 and [Insurer]
was not notified. Entities are ineligible as Named Insureds
on Homeowner policies.

5

Commissioner's Adjudication and Order, at 25; *see* R.R. at 291a. Although Insurer relied on an implied material misrepresentation about the transfer and increased exposure to risk, those reasons were not articulated in the Nonrenewal Notice. Insurer did not establish material misrepresentation or that change in ownership was material to the risk. Commissioner's Adjudication and Order, at 25-27.

Accordingly, the Commissioner determined that Insurer's retroactive cancellation and prospective nonrenewal violated the Act in multiple ways. By order dated June 17, 2022, the Commissioner ordered Insurer to reinstate the Policy with no lapse in coverage. Insurer's petition for review in this Court now follows.[2]

## II. Issues

Insurer raises three issues. First, Insurer contends that the Commissioner erred in applying the Act to the Policy termination because Insurer rescinded, rather than cancelled or refused to renew, the Policy. Second, Insurer asserts that the Commissioner erred in finding that Insurer failed to establish a material misrepresentation to justify rescission of the Policy when Insurer showed that Intervenor knowingly made false representations to Insurer that were material to the risk insured against. Third, Insurer argues that the Commissioner erred in finding that Insurer's June 24, 2020, Nonrenewal Notice failed to substantively comply with the Act when the Notice stated a specific reason for the refusal to renew and complied with the requirements of the Act.

---

[2] Our review is limited to determining whether there has been an error of law, whether constitutional rights have been violated, whether the procedure before the agency was contrary to the statute, or whether the agency's factual findings are supported by substantial evidence. 2 Pa. C.S. §704; *see Insurance Federation of Pennsylvania, Inc. v. Department of Insuranc*e, 889 A.2d 550, 553 (Pa. 2005). On issues of statutory interpretation and questions of law, our review is plenary. *Insurance Federation*, 889 A.2d at 553.

## III. Discussion
### A. Cancellation or Rescission

First, Insurer contends that the Commissioner erred by applying the Act to the Policy termination. The Act applies to cancellations and nonrenewals, not rescissions. Insurer maintains that it exercised its common law right to rescind the Policy based on Intervenor's material misrepresentations as to the ownership and failure to disclose the fact that he transferred the Property via Deed into the Trust in 2010. Insurer rescinded the Policy retroactive to March 22, 2010, and refunded all premium payments made from 2010 onward. Because common law principles of rescission apply to the April 2020 Policy termination, rather than the Act, the Commissioner's application of the Act was erroneous.

An insurer retains the common law right to rescind the policy in addition to the permissible statutory reasons to cancel or not renew a policy. *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner (Edgar Miller)*, 580 A.2d 300, 311 (Pa. 1990); *see Lewis v. Insurance Department*, 935 A.2d 36 (Pa. Cmwlth. 2007) (automobile insurance policy). An insurer may rescind the policy upon discovery that the insured procured it through fraud or misrepresentation material to the risk assumed by the company. *Metropolitan*, 580 A.2d at 312.

This Court has distinguished the rescission of a contract from a cancellation of a contract, stating:

> Rescission of a contract and cancellation of a contract are two separate and distinct legal concepts. *A rescission amounts to the unmaking of a contract* and is not merely a termination of the rights and obligations of the parties towards each other but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief. Cancellation is an act destroying the force and

7

> effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other.

*Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner (Bonnie Beck)*, 509 A.2d 1346, 1348 (Pa. Cmwlth. 1986), *aff'd*, 535 A.2d 588 (Pa. 1987). In other words, a rescission is retroactive relief that completely undoes a contract and relieves the parties of all responsibilities to each other from the very beginning. *See id.* It is as if there was never an agreement in place between them, whereas a cancellation leaves undisturbed the original contract for some period of time and later relieves the parties of future rights and responsibilities. *See id.*

Here, Insurer's termination notices bear all the hallmarks of a cancellation. On April 13, 2020, and April 29, 2020, Insurer mailed notices titled "Cancel Statements" to Intervenor. R.R. at 127a, 148a. The April 29, 2020 Cancel Statement stated in its entirety:

> This Policy has been *cancelled*.
> The reason for *cancellation* is: Dwelling not eligible for coverage due to ownership change.
> Your Policy was *cancelled* as of: 3/22/2010
> You are entitled to a premium refund in the amount of $9,140.00.
> You have already received a check in the amount of $5,000 and you will receive an additional check in the amount of $4,140.00.

*Id.* at 148a (emphasis added). Neither "Cancel Statement" mentions the terms "rescind" or "rescission." *See id.* at 127a, 148a. Both "Cancel Statements" clearly and repeatedly identify the Insurer's action as a cancellation. Only after Intervenor filed a complaint did Insurer attempt to retroactively rebrand the cancellation as a "rescission." Although the notices retroactively "cancelled" the Policy effective March 22, 2010, a true rescission would have voided the Policy from the inception date, May 6, 1998, not at some midpoint in time. Although we recognize that

8

insurance policies are renewed annually, to accept Insurer's position that "each year involved a new contract with new terms and conditions," Petitioner's Brief at 24, then Insurer would have needed to rescind 10 separate contracts, which it did not do. Upon review, the Commissioner did not err or abuse his discretion in determining that the termination was a midterm cancellation of the Policy subject to the Act.

The Act prohibits unfair or deceptive acts or practices, which include practices such as cancelling or refusing to renew a policy unless it fits within one of the statutory reasons. Sections 4 and 5(a)(9) of the Act, 40 P.S. §§1171.4, 1171.5(a)(9). Specifically, unfair or deceptive acts or practices in the business of insurance means:

> *Cancelling any policy* of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more *or refusing to renew any such policy unless* the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company; or there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued; or there is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured; or the insured has failed to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit; or for any other reasons approved by the commissioner pursuant to rules and regulations promulgated by the commissioner. No cancellation or refusal to renew by any person shall be effective unless a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address.

40 P.S. §1171.5(a)(9) (emphasis added).

In addition, such notice shall:

9

(i) Be approved as to form by the insurance commissioner prior to use.

(ii) State the date, not less than thirty days after the date of delivery or mailing on which such cancellation or refusal to renew shall become effective.

(iii) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(iv) Advise the insured of his right to request, in writing, within ten days of the receipt of the notice of cancellation or intention not to renew that the insurance commissioner review the action of the insurer.

(v) Advise the insured of his possible eligibility for insurance under the act of July 31, 1968 (P.L. 738, No. 233), known as "The Pennsylvania Fair Plan Act," or the Pennsylvania Assigned Risk Plan.

(vi) Advise the insured in a form commonly understandable of the provisions of subparagraphs (ii), (iii) and (iv) of this paragraph as they limit permissible time and reasons for cancellation.

(vii) Advise the insured of the procedures to be followed in prosecuting an appeal.

40 P.S. §1171.5(a)(9)(i)-(vii). In order to substantively comply, an insurer must specifically state both the factual reason and permissible legal reason in its notice of termination. *Statesman Insurance Co. v. Insurance Department*, 528 A.2d 1042, 1043 (Pa. Cmwlth. 1987) (holding that since the insurer only cited the factual reason without a permissible statutory reason, the policy termination violated the Act).

The provisions of a termination notice are strictly construed in favor of the insured and against the insurer. *Statesman*, 528 A.2d at 1044. An insurer has the burden of proving procedural and substantive compliance with the statutory requirements for cancellation of a homeowners' policy of insurance. *Frederick*

10

*Mutual Insurance Co. v. Pennsylvania Insurance Department*, 214 A.3d 297, 303 (Pa. Cmwlth. 2019).

As for whether Insurer's cancellation complied with the Act, the Commissioner found that Insurer failed to comply with the Act's procedural and substantive notice requirements based on the notices themselves and Insurer's evidence. With regard to procedural compliance, Sitkus conceded that the April 9, 2020 claim denial letter did not meet many of the procedural requirements for cancellation, including that the letter was not on a form approved by the Commissioner, did not provide the insured with at least 30 days' notice prior to cancellation, and did not advise the insured of his right to request review by the Commissioner, his eligibility for other insurance or appeal procedures. R.R. at 378a-79a. Sitkus also conceded that neither of the Cancel Statements contained this required information. *Id.* at 380a-383a. On this basis alone, the Commissioner did not err or abuse his discretion in determining that Insurer violated the Act.

As for substantive compliance, Insurer did not specifically state the factual reason and permissible legal reason in its notices of termination. In *Statesman*, this Court addressed a similar situation. There, the insurer sought to not renew a homeowners' policy due to the "[i]ncrease in hazard due to failure to repair or replace heating system in home." *Statesman*, 528 A.2d at 1043. This Court looked at the statutory language under Section 5(a)(9) of the Act and found that the reason stated by the insurer did not meet the statutory requirements. *Id.* at 1043-44. The Act states numerous reasons that a policy can be terminated. The provision of relevance was whether "there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued[;] or there is a substantial increase in hazards insured against by reason of willful or

11

negligent acts or omissions by the insured." 40 P.S. §1171.5(a)(9). The insurer argued that the reason given in the notice subsumed the foregoing statutory criteria. *Statesman*, 528 A.2d at 1044. This Court disagreed and determined that the language the insurer chose to use as its reason for cancellation only implicated the increase in hazard provision, which required willful or negligent acts or omissions by the insured. *Id.* Since the Commissioner did not find a hazard increase based on the insured's willful or negligent actions, this Court found that the insurer was not permitted to cancel the policy for the reason stated. *Id.* We noted that the insurer could have provided a different statutory reason for the cancellation and could issue a future notice that relies upon a different statutory provision such as the increase in risk rationale. *Id.* However, since such provisions are to be strictly construed in favor of the insured, and against the party providing the notice, we upheld the Commissioner's adjudication. *Id.*

Here, in the first Cancel Statement, Insurer stated "[d]welling not eligible for coverage" as its reason for cancellation. R.R. at 127a. In its second Cancel Statement, Insurer was slightly more specific in stating its reason was "[d]welling not eligible for coverage due to ownership change." *Id.* at 148a. Although Insurer included a reason for its cancellation, the reason stated – ineligibility for coverage because of the change in ownership – is not a permissible ground for cancellation under the statute. Missing from the stated reason is an allegation that the insured made a misrepresentation or that the risk insured against substantially increased. Only Insurer's April 9, 2020 claim denial letter offered "Misrepresentation, Concealment, or Fraud" based on the transfer of the Property to the Trust as a basis to exclude the claim. *Id.* at 125a. However, this letter was a claim denial and did not serve as the cancellation notice. As the Department notes,

12

an insured should not have to review multiple documents side-by-side to understand why the insurer is terminating a policy that they have paid on for over 20 years immediately after their house burned down. Furthermore, the letter does not describe how the transfer was "material to the acceptance of the risk or to the hazard assumed by the company." 40 P.S. §1171.5(a)(9). The letter merely stated that the "failure to notify [Insurer] of the change resulted in a less costly premium . . . ." R.R. at 125a. Because notice provisions must be strictly construed in favor of the insured and against the party providing notice, the Commissioner did not err in determining the stated reason did not satisfy the Act.

### B. Material Misrepresentation

Next, Insurer contends that the Commissioner erred in finding that Insurer failed to establish any element of a material misrepresentation on the part of the Intervenor. The record shows that the Muths signed a Deed in 2010 in which they relinquished all rights, title, and interest in the Property, such that their subsequent declarations of ownership to Insurer were demonstrably false. According to Insurer, the change in ownership was material to the risk insured because the Property was transferred to someone other than the Intervenor, and the failure to disclose the change in ownership led to lower premium payments being paid by Intervenor. Intervenor knew that he signed the Deed in 2010 and that the Property was, consequently, included in the Trust that was named on the Deed. Therefore, Insurer contends that it established each element of a material misrepresentation needed to properly rescind the Policy.

An insurer who cancels or refuses to renew a policy due to a misrepresentation must establish: (1) the declaration was false; (2) the subject matter of the misrepresentation was material to the risk assumed by the insurer; and (3) the

13

declarant knew the statement to be false or made the statement in bad faith. *Allstate Insurance Co. v. Stinger*, 163 A.2d 74, 78 (Pa. 1960); *Erie Insurance Co. v. Foster*, 560 A.2d 856, 858 (Pa. Cmwlth. 1989).

In addition, our Supreme Court has stated that "fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta*, 589 A.2d 679, 682 (Pa. 1991). "[F]raud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Id.* (citation omitted). "[T]he concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement." *Id.* However, "there must be a deliberate intent to deceive." *Rohm and Haas Co. v. Continental Insurance Co.*, 781 A.2d 1172, 1179 (Pa. 2001). In addition, the insurer must prove the fraud and/or misrepresentation by "clear and convincing" evidence, which is evidence that is "'so clear, direct, weighty and convincing, without hesitancy, of the truth of the precise facts of the issue.'" *Id.* (quoting *Lessner v. Rubinson*, 592 A.2d 678, 681 (Pa. 1991)).

The Policy itself reflects the foregoing standard, providing:

> ***Misrepresentation, Concealment or Fraud*** -- This policy is void as to "you" and any other "insured" if before or after the loss:
>
> a. "you" or any "insured" has *willfully concealed or mispresented*:
>
>> 1) a material fact or circumstance that relates to this insurance or the subject thereof; or
>>
>> 2) an "insured's" interest therein; or

14

b. there has been fraud or false swearing by "you" or any other "insured" with regard to a matter that relates to this insurance of the subject thereof.

R.R. at 125a (emphasis added).

Upon review, Insurer did not meet the test for misrepresentation. First, Insurer failed to establish that any "declaration" was made by the insured in regard to the transfer or ownership of the Property. Intervenor simply failed to disclose the transfer of the Property to the Trust by Deed. To the extent a declaration of ownership may be implied, it was not false. The Policy identifies the Intervenor as the "named insured." R.R. at 1a. The Policy defines the "insured premises" as the location the insured owns and resides in. *Id.* at 4a. The Policy further notes that the occupancy was by "Owner" but fails to define the term. *Id.* at 1a; *see id.* at 3a-5a (Policy's definitions).

"When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Cordero v. Potomac Insurance Co. of Illinois*, 794 A.2d 897, 900 (Pa. Super. 2002); *accord Suffolk Construction Co. v. Reliance Insurance Co.*, 221 A.3d 1205, 1212 (Pa. 2019); *Naylor v. Board of Supervisors of Charlestown Township*, 253 A.3d 786, 806 (Pa. Cmwlth.), *appeal denied*, 260 A.3d 72 (Pa. 2021). "To define an undefined term, we may consult definitions in statutes, regulations or the dictionary for assistance." *Atiyeh v. Board of Commissioners of Township of Bethlehem*, 41 A.3d 232, 236-37 (Pa. Cmwlth. 2012); *see Suffolk*, 221 A.3d at 1213 (approving use of dictionaries). Where the terms of a contract are ambiguous, that is, if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense, the provision is construed against the drafter. *State Farm Fire & Casualty Co. v. PECO*, 54 A.3d 921, 928 (Pa. Super. 2012); *Department of Transportation v. Semanderes*, 531 A.2d 815, 818 (Pa. Cmwlth. 1987).

15

As we recently explained in a case involving trusts:

> An "owner" is "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested." Black's Law Dictionary 1331 (11th ed. 2019). . . . Our courts have long recognized that such control renders property held in trust equivalent to the "personal property" of the trustor. *See, e.g.*, *In re Lines' Estate*, [26 A. 728, 733 (Pa. 1893)].

*In re Estate of Potocar*, 283 A.3d 936, 944 (Pa. Cmwlth. 2022). We concluded that "a husband and wife may 'create' ownership using a trust." *Id.*

In addition, the term "owner" is defined for real estate tax purposes as, *inter alia*, "[a] person who owns real property as a result of being a beneficiary of a Will or Trust as a result of intestate succession," "[a] person in possession under a life estate," and "[a] grantor who has placed real property in a Revocable Trust." *See* Section 8401 of the Local Government Unit Debt Act, 53 Pa. C.S. §8401 (definition of owner).

Here, according to the Trust, the Muths were Settlors and Trustees of the Trust. R.R. at 185a. They retained the right to possess, use, and convey all property in the Trust. Their assets were held in Trust for the Muths' use and benefit to protect their assets. Although the Muths transferred the Property to an irrevocable asset protection sub-trust within the Trust itself, and named their daughter as trustee, *Id.* at 46a, 216a, the Muths maintained a life estate interest and special powers of appointment. This life estate gave them an ownership interest in the Property. They maintained the right to possess and use the Property as their homestead. After the transfer, the Muths continued to reside at the Property, and paid for all expenses and maintenance for the Property, including all taxes. *Id.* at 418a. We conclude that the Commissioner did not err in finding that Intervenor did not make any false declaration, outright or implied, because the Muths continued to maintain an

16

ownership interest in and continued to reside in the Property, despite deeding the Property to the family Trust.

Second, the transfer to the Trust was not material to the risk. The fact that Insurer's underwriting guidelines would have required a different type of dwelling policy, with a more expensive premium than a homeowner's policy, did not, in and of itself, show a substantial change or increase in hazard in the risk assumed by Insurer.[3] Although under some circumstances the transfer of ownership into a trust may be material to risk, such as if the insured residents died or rented out the property, such was not the case here. The transfer did not alter the Muths' possession or use of the Property. Furthermore, the Muths thought they were the titled owners until their death and continued to reside and maintain the property as owners, paying the utilities, real estate taxes, and homeowners' insurance, as well as participating in inspections of the property by Insurer and making any needed repairs or changes required. R.R. at 418a. Thus, Insurer did not prove that the transfer of the Property into the family Trust was material to the risk.

Third, the Muths did not make a statement in bad faith or known to be false. Intervenor credibly testified that he did not understand that the Property had transferred into the Trust. R.R. at 78a-81a. He understood from the Trust creator that the Property would not transfer to the Trust until the Muths were both deceased. *Id.* Intervenor did not learn that the Property transferred into the Trust until after the fire. *Id.* at 81a. Insurer offered no evidence to the contrary.

Upon review, the Commissioner's findings are supported by substantial evidence. Because Insurer met no elements of the three-part test, there was no

---

[3] Insurer did not articulate what the difference in premium would be, if any, and never asked Intervenor to pay the difference.

17

material misrepresentation or permissible reason for cancellation in violation of the Act.

### C. Nonrenewal

Lastly, Insurer contends that the Commissioner erred in finding that Insurer's June 24, 2020, Notice of Nonrenewal did not substantively comply with the Act. Contrary to the Commissioner's finding, the Act does not require that a specific statutory reason be provided on a notice of cancellation or nonrenewal, rather, all that is required by the Act is that the notice state the specific reason for cancellation or nonrenewal. The reason provided was that the Property was no longer owner-occupied. Intervenor did not actually occupy the Property at the time of the June 24, 2020 Nonrenewal Notice. Intervenor testified that he was residing at 3113 Mountain Road, Slatington, Pennsylvania 18080, as of January 4, 2020. R.R. at 57a. Because the June 24, 2020, Nonrenewal Notice stated the specific reason for nonrenewal, the Notice was sufficient and substantively compliant with the Act.

As discussed above, the Act requires an insurer to "[s]tate the specific reason or reasons of the insurer for cancellation or refusal to renew." 40 P.S. §1171.5(a)(9)(iii). The statutory reasons include a material misrepresentation by the insured, a substantial increase in hazard, or nonpayment of premium to terminate a policy. 40 P.S. §1171.5(a)(9). As discussed above, an insurer's failure to cite to an applicable statutory reason creates a substantive deficiency in the termination notice. *Statesman*, 528 A.2d at 1044.

Here, the June 24, 2020 Nonrenewal Notice stated the following reason for nonrenewal: "Property No Longer Owner Occupied. The [P]roperty was deeded to a Trust in 2010 and [Insurer] was not notified. Entities are ineligible as Named Insureds on Homeowner policies." R.R. at 291a. The reason cited is not one of the

enumerated reasons set forth in the Act. *See* 40 P.S. §1171.5(a)(9). Although Insurer argues that the reason implicates the statutory misrepresentation reason, the notice fell short of conveying that. Because provisions required to cancel or not renew must be strictly construed in favor of the insured and against the party providing the notice, *Statesman*, 528 A.2d at 1043, we conclude that the Commissioner did not err or abuse his discretion in determining that the Nonrenewal Notice did not satisfy the requirements of the Act.[4]

## IV. Conclusion

Accordingly, we affirm the Commissioner's order.

_____
MICHAEL H. WOJCIK, Judge

---

[4] Furthermore, Insurer's argument that Intervenor no longer occupied the Property is duplicitous under the circumstances. Although Intervenor testified that he was living at 3113 Mountain Road, Slatington, Pennsylvania, 18080, since January 4, 2020, R.R. at 57a, this move occurred *after* the fire. The reason Intervenor was no longer occupying the Property was because it was uninhabitable from smoke damage. *Id.* at 105a. Insurer denied Intervenor's fire damage claim, which would have enabled the Muths to restore and reoccupy their Property.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nazareth Mutual Insurance Company, :
:
Petitioner :
:
v. : No. 730 C.D. 2022
:
Pennsylvania Insurance Department, :
:
Respondent :

# **O R D E R**

AND NOW, this 12th day of May, 2023, the order of the Acting Insurance Commissioner of the Pennsylvania Insurance Department, dated June 17, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge