732 A.2d 1201

George LUCEY

v.

WORKMEN'S COMPENSATION APPEAL BOARD (VY–CAL PLASTICS PMA GROUP).

Appeal of Vy–Cal Plastics Corporation, Appellant.

VY–Cal Plastics Corporation, Appellant,

v.

Workmen's Compensation Appeal Board (Lucey), Appellee.

Nos. 16, 17 E.D.1998.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1998.

Decided July 9, 1999.

274

Patricia A. Mattern, Philadelphia, John P. Myers, for Vy–Cal Plastics.

Lawrence D. Levin, Bala Cynwyd, for George Lucey.

David Hawkins, Pittsburgh, for W.C.A.B.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

CASTILLE, Justice.

On August 13, 1984, appellee George Lucey ("claimant") filed a claim petition seeking benefits due to injuries caused by his exposure to chemicals during the course of his employment with appellant Vy–Cal Plastics Corporation ("employer"). At a hearing before the Workers' Compensation Judge ("WCJ"), claimant presented the medical testimony of two treating physicians who opined that his allergic reaction to chemicals at work had caused a staphyloccus bacterial infection. Employer countered with the medical testimony of two experts who disagreed that claimant had suffered any injury due to his exposure to chemicals in the workplace. Finding claimant's experts more credible than employer's experts, the WCJ determined that claimant was totally disabled due to an occupational injury and disease. The WCJ awarded claimant weekly wage benefits to be calculated from January 14, 1984, medical expenses for treatment and hospitalization totaling $175,546.32, and attorney's fees on all past-due compensation, including both the weekly indemnity benefits and the unreimbursed medical expenses.

On April 18, 1989, the Workers' Compensation Appeal Board ("Board") affirmed the WCJ's order of compensation. However, the Board remanded the matter to the WCJ for a recalculation of counsel fees because the Board determined that it was unconscionable to award counsel fees based on the amount paid for medical bills. While the remand was still pending before the WCJ, employer tendered payment in the amount of $140,000 to compensate claimant for his medical

bills. However, claimant's counsel withheld payment of this $140,000 to claimant's medical provider, Suburban General Hospital, until the hospital agreed to accept $110,000 as payment in full of the outstanding medical bill. The remaining $30,000 was subsequently remitted to claimant. This negotiation and the subsequent return of the $30,000 to claimant occurred without the knowledge or consent of employer.

In September of 1989, employer filed a petition to suspend or modify claimant's benefits. Employer also sought a subrogation credit against future benefits in the amount of the $30,000 refund which claimant had received from the Hospital settlement. In response, claimant filed a penalty petition, alleging that employer had failed to pay interest on claimant's past-due medical bills.

On December 15, 1993, the WCJ circulated a decision reaffirming the original award of compensation benefits but awarding employer a credit against future benefits to the extent of the $30,000 returned to claimant pursuant to the Hospital settlement. Additionally, the WCJ ordered claimant's counsel to reimburse to employer the sum of $35,109.27, which it determined had been improperly awarded to counsel as fees related to the medical expenses. The WCJ also ordered employer to pay claimant 10% interest which was owed on three enumerated medical bills, as well as a 20% penalty on all past-due interest. The WCJ denied claimant counsel fees for his penalty petition.

Employer filed appeals from the award of interest and penalties and from the award of continuing compensation benefits, and claimant filed an appeal from the award of a credit against $30,000 in future benefits and from the order denying reimbursement of attorney's fees. Supersedeas was granted to all parties by the Appeal Board's Order of February 2, 1994. Subsequently, the Board affirmed the order of the WCJ, except for that portion which denied respondent counsel fees for his penalty petition. On appeal to the Commonwealth Court, an *en banc* court affirmed the award of benefits and affirmed the award of interest on the three enumerated medical bills. In all other respects, the Common-

wealth Court reversed the Board. Employer timely sought review in this Court, and this Court granted review limited to the issue of whether the Commonwealth Court erred by reversing the Board and WCJ's conclusion that employer was entitled to a $30,000 subrogation credit arising from the negotiated settlement between claimant and his medical services provider. For the reasons that follow, we reverse the determination of the Commonwealth Court on that issue.

[1] At the outset, we must resolve claimant's motion to dismiss this appeal on grounds of mootness pursuant to Pa. R.A.P.1972(4).[1] Claimant has conceded that the $30,000 credit is an appropriate remedy and may be applied against claimant's future medical expenses. Therefore, claimant asserts that no controversy lingers, since there is no dispute on the issue of the credit. However, employer contends that a controversy remains for this Court's resolution because claimant has only conceded the credit as applied to future medical expenses. Employer points out that the WCJ ordered that "[employer] shall receive a credit of $30,000 against claimant's future *indemnity and* medical benefits" (emphasis added). A dismissal of these proceedings based on claimant's representation could arguably still render employer liable for the payment of indemnity benefits, without a corresponding $30,000 credit. Thus, since claimant has only conceded a portion of the WCJ's order, we agree with employer that a controversy remains. Therefore, claimant's motion to dismiss as moot is meritless and we will address the merits of this dispute.

■ The issue in this matter is whether equitable principles mandate a $30,000 subrogation credit in employer's favor as a result of a negotiated settlement between claimant and his medical services provider which allowed claimant a refund of $30,000 of the $140,000 payment which employer had tendered in payment of claimant's medical bills. The Commonwealth Court determined that equity does not allow such a subrogation credit in this case. We disagree.

1. Pa.R.A.P.1972(4) provides:
   Subject to Rule 123 (applications for relief), any party may move:
   (4) To dismiss for mootness.

This Court has previously looked to the Restatement of Restitution as a source of authority in determining whether the retention of a particular benefit would be unjust. *See D.A. Hill Co. v. Clevetrust Realty Investors,* 524 Pa. 425, 432, 573 A.2d 1005, 1009 (1990); *Balazick v. Ireton,* 518 Pa. 127, 134, 541 A.2d 1130, 1133 (1988); *Associated Hospital Service of Phila. v. Pustilnik,* 497 Pa. 221, 226, 439 A.2d 1149, 1151 (1981). Section twenty of the Restatement provides as follows:

§ 20 MISTAKE AS TO EXTENT OF DUTY OR AMOUNT PAID IN DISCHARGE THEREOF:

A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess.

The foregoing provision of the Restatement is applicable to the matter *sub judice,* and the provision mandates a subrogation credit in favor of employer. Here, the employer believed that the full $140,000 which was tendered to claimant was necessary in order to pay claimant's medical bills and thereby discharge employer's duty under the worker's compensation statute. However, in order to discharge an employer's duty under the statute with regard to medical expenses, an employer need only pay an employee's actual medical expenses. Here, employer tendered an amount which ultimately proved to exceed claimant's actual medical expenses by $30,000, based on employer's mistaken factual belief that the full sum proffered would prove to be the sum necessary for discharge of employer's duty. Consequently, under Section Twenty of the Restatement, employer is entitled to restitution of the $30,000 excess.

Although the equitable principle mandating a subrogation credit in employer's favor seems clear enough, the Commonwealth Court determined that the employer here was barred from seeking equity in this matter by the doctrine of "unclean hands." Specifically, the Commonwealth Court determined

that employer's failure to pay past-due interest on the medical bills ordered by two referees in this matter rendered its hands "unclean" and thereby precluded it from seeking relief in equity. We disagree with this conclusion.

■■■ The doctrine of unclean hands is derived from the unwillingness of a court to give relief to a suitor who has conducted himself so as to offend the moral sensibilities of the judge, and the doctrine has nothing to do with the rights and liabilities of the parties. *In re Estate of Pedrick*, 505 Pa. 530, 544, 482 A.2d 215, 222 (1984). This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with iniquity or bad faith relative to the matter in which he seeks relief. This doctrine is rooted in the historical concept of a court of equity as a vehicle for affirmatively enforcing the requirement of conscience and good faith. Thus, while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. *See id.* (citing *Shapiro v. Shapiro*, 415 Pa. 503, 506–507, 204 A.2d 266, 268 (1964)(quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814–815, 65 S.Ct. 993, 997–998, 89 L.Ed. 1381 (1945))).

■■ Here, neither the Commonwealth Court nor claimant have cited any portion of the record showing that employer improperly withheld past-due interest on medical bills. Our own review of the record reveals that employer was granted supersedeas by the Board when it appealed from the December 13, 1993 Decision and Order of the WCJ ordering employer to pay interest on unpaid medical bills. *See* R.R. at 300a. When the Board's decision was issued on February 26, 1996, petitions for review were filed by both parties with the Commonwealth Court, as well as renewed applications for supersedeas. After the Commonwealth Court denied employer's application for supersedeas, employer paid all amounts owing under the Board's order. Employer's legitimate attempts to pursue the legal remedies which were available to it in the

form of supersedeas—particularly when the application for supersedeas was actually granted—hardly approach the level of "fraud or deceit as to the controversy in issue" which would preclude employer from seeking equity under the doctrine of "unclean hands." Thus, the Commonwealth Court erred by determining that the employer here was barred from seeking equitable relief in this matter.

Because the doctrine of equitable restitution compels a subrogation credit of $30,000 in employer's favor in this matter, and because employer is not barred from seeking equity by the doctrine of "unclean hands," the order of the Commonwealth Court is reversed and the original order of the WCJ is reinstated to the effect that "[employer] shall receive a credit of $30,000 against claimant's future indemnity and medical benefits." Jurisdiction is relinquished.

Justice SAYLOR files a concurring opinion in which Justice ZAPPALA joins.

Justice NIGRO concurs in the result.

Justice NEWMAN files a dissenting opinion in which Justice CAPPY joins.

SAYLOR, Justice, concurring.

In my view, to allow claimant's attorney to settle with the medical provider and retain the difference for his benefit, or for the benefit of his client, would subvert the policy and scheme of the Workers' Compensation Act.

Under the Act, a claimant is compensated only for a decrease in earning power occasioned by a work-related injury, see *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 142, 634 A.2d 592, 595–96 (1993), and the obligation of an employer or its insurer related to medical treatment of a claimant is defined by reasonable and necessary medical expenses resulting from the work-related injury, see 77 P.S. § 531.

In the present case, the $30,000 difference between the costs of claimant's medical treatment and the amount paid by

employer reflects neither a loss of earnings by claimant, nor an amount actually paid for the medical services he received. Therefore, the majority quite properly holds that employer is entitled to a credit for this money against claimant's future indemnity and medical benefits.

Justice ZAPPALA joins this concurring opinion.

NEWMAN, Justice, dissenting.

I respectfully dissent. On September 6, 1990 Employer filed a Petition for modification and subrogation pursuant to Section 319 of the Worker's Compensation Act (the Act),[1] alleging that Claimant obtained funds from Suburban General Hospital and thus Employer was entitled to a future credit against medical expenses in the amount of these funds. (Findings of Fact, 12/15/93, No. 14). The en banc Commonwealth Court determined that Employer was not entitled to a future credit because there was no statutory authority to allow the Employer to seek recoupment or subrogation from the Claimant. I agree.

Employer requested relief pursuant to Section 319 of the Act, and this section, by its plain terms, simply does not provide for the subrogation that Employer seeks. Instead, Section 319 of the Act entitles an employer to subrogation or modification where a work injury is caused by a third party or where the employer or an insurance company has paid additional benefits on the basis that the injury is not compensable under the Act. *See* 77 P.S. § 671. Employer avers neither scenario. I believe that we are constrained to review this matter based upon the rights to subrogation set forth in the Act. Because the Employer is not entitled to subrogation or recoupment pursuant to Section 319, I agree with the Commonwealth Court that Employer is not entitled to the future credit. The Majority's decision to ignore Section 319 and to award Employer the $30,000.00 future credit based upon the equitable doctrine set forth in Section 20 of the Restatement of Restitution is misplaced for many reasons.

1. 77 P.S. § 1 et seq.

First, it does not appear that this Court has previously adopted the Restatement of Restitution § 20 (Section 20) (The cases cited by the Majority do not reference this Section). I hesitate to do so here because the facts before us do not fit this Section. Section 20 provides for restitution only where a person mistakenly has paid an "excessive amount" of money because of an "erroneous belief" that "the sum paid was necessary to discharge a duty." Here, when Employer issued a check for $140,000.00, it did not pay an "excessive amount" of money to Claimant and did not pay an amount in excess of that necessary to discharge Employer's statutory duty to pay medical expenses under the Act. The medical bills owed to the hospital, which Employer was required to pay, were more than $175,000.00. Claimant incurred the majority of these bills in 1984 and in 1986; however, they remained outstanding through February 1989, when Employer finally issued a check payable to Claimant and to the hospital in the amount of $140,000.00. (Employer subtracted Claimant's attorneys' fees from this amount).[2]

During the time when the hospital bills remained unpaid, Suburban General Hospital apparently filed an action in the Court of Common Pleas of Montgomery County against Claimant for the payment of these bills. (Findings of Fact, 12/15/93, Nos. 10, 11). The hospital's action against the Claimant appears to have originated because the bills were outstanding during the time in which the Employer exercised its rights to contest the employee's claim for a work related injury. In March 1989, the hospital agreed to accept $110,000 in payment of the bill and dismissed its action against Claimant. The Claimant also released any claims against the hospital. *Id.* The $30,000.00 at issue here reflects Claimant's negotiation of a mutual release and indemnification agreement

---

**2.** Pursuant to Section 306(f.1) of the Act, 77 P.S. § 531, an employer is obligated to pay all reasonable medical bills incurred by an injured employee. Here, the hospital's charge for its medical services to Claimant was $175,546.32, from which $35,109.27 was deducted for Claimant's counsel fees and the remaining $140,437.05 paid by check made payable to Claimant and the hospital. According to the Board's order, Employer was statutorily responsible for payment of the full $175,546.32.

with the hospital in an apparent settlement of a dispute between the hospital and the Claimant and does not act to discharge the Employer of the duty to pay the amount of medical bills under the statute. *See, e.g.,* 77 P.S. § 531 (statutory provisions for the payment of reasonable medical expenses). Accordingly, Section 20 is not applicable to the facts of this case.

Second, I agree with the Commonwealth Court that the facts presented to us do not entitle Employer to restitution. The Commonwealth Court determined that the equities presented did not support restitution to Employer because Employer did not pay more than its fair share. In particular, the Commonwealth Court found that:

> Employer does not maintain that ... the $30,000 overpayment should be returned to Suburban (the hospital). **Instead, Employer seeks a windfall or a reduction in the amount that it was statutorily required and ordered to pay.**

701 A.2d at 642 (emphasis added). I find no error in the holding of the en banc Commonwealth Court and accordingly I would affirm their decision.

Third, the Claimant was not "unjustly enriched" vis-à-vis the Employer because at no time did Employer pay more than it was statutorily required to pay. Section 306(f.1) of the Act, 77 P.S. § 531. Unjust enrichment occurs when a person has and retains money or benefits, which in justice and equity belong to another. Blacks Law Dictionary 1535 (6th Ed 1990). The $30,000.00 may indeed have originally "belonged" to the hospital because it is the creditor who rendered the service; however, the Employer has not shown that the $30,000.00 belongs to it. While allowing Claimant to keep the $30,000.00 may serve as a windfall to him, Employer equally receives a windfall from the $30,000.00 future credit. Employer never paid the full amount of the medical bill, and never paid an amount more than the reasonably incurred medical expenses. In a situation like here, where we must necessarily grant a windfall to either the employer or the employee, I believe that the equities of the Act tip in favor of allowing the Claimant to

retain the $30,000.00. As set forth in *Harper & Collins v. W.C.A.B. (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996), "Borderline interpretations of the Act are to be construed in the injured party's favor."

For these reasons, I respectfully dissent.

Justice CAPPY joins this Dissenting Opinion.

