## City of Philadelphia v. Boris

*Lawrence Doherty,* for plaintiff.
*Simon J. Rosen,* for defendant.

WOGAN, *J.,* January 7, 2004—Defendant, John A. Boris, Esquire, appeals this court's judgment of sentence awarding restitution in the amount of $8,000 to the City of Philadelphia to recoup attorney fees that were mis-

takenly sent to defendant. Defendant makes numerous claims contending that this court erred in this decision. No relief is due.

## BACKGROUND

In April 1995, city worker Russell Stone, hereinafter referred to as claimant, represented by attorney John A. Boris, hereinafter referred to as defendant, filed a claim petition against claimant's employer, the City of Philadelphia, hereinafter referred to as plaintiff, alleging a work-related shoulder injury occurring on September 16, 1994. At a March 7, 1997 hearing, before Workers' Compensation Judge Alan R. Gilbert, the parties submitted a stipulation of facts to resolve all outstanding issues in the case. On March 11, 1997, Judge Gilbert approved the stipulation including attorney's fees.[1]

## FACTUAL FINDINGS

In January 2001, claimant retained new counsel, Attorney Jay Elliott Shor, Esquire, to negotiate a final settlement of his entitlement to future workers' compensation benefits for the 1994 injury. On February 15, 2001, CompServices Inc. called defendant, notified him that claimant had retained new counsel and provided him with attorney Shor's name, address, and telephone number. Defendant never advised CompServices Inc. that he be-

---

1. Judge Gilbert awarded defendant an attorney fee of 20 percent of claimant's total disability wage benefits. Defendant received biweekly checks from CompServices Inc., plaintiff's third-party adjuster. In total, defendant received $15,015 in attorney's fees in biweekly payments of $105 from March 9, 1995 through June 28, 2001.

lieved that he had a claim in any future petitions by claimant. (N.T. 4/24/03, vol. I, pp. 34-35.)[2]

Attorney Shor ultimately negotiated a final settlement between claimant and plaintiff, and filed a "Petition to seek approval of a compromise and release agreement" with the Bureau of Workers' Compensation.[3] At a hearing on June 29, 2001, Judge Gilbert heard claimant's testimony, presented by Attorney Shor, which included claimant's affirmation of his contingent fee agreement with Shor. (N. T. 6/29/01, pp. 3-8, plaintiff's exhibit H.) The fee agreement provided for a fee of 20 percent of the $40,000 final settlement, $8,000. Judge Gilbert approved the compromise and release agreement, which incorporated claimant's written fee agreement with Attorney Shor, and issued a single page bench order for the payment of the settlement monies to claimant and Shor.[4]

Plaintiff forwarded Judge Gilbert's order to its third-party adjuster, CompServices Inc., for payment to Attorney Shor in accord with the order. On July 23, 2001, Angela Cruz, the adjuster from CompServices Inc., mistakenly sent the check to defendant, claimant's former attorney, rather than to Mr. Shor. Upon receipt of the $8,000 check, defendant deposited the check into his business account.

---

2. Defendant had communicated with CompServices Inc. up until January 19, 2001, to try to settle claimant's case. (N.T. 4/24/03, vol. I, p. 50.)

3. The bureau assigned the petition to Judge Alan R. Gilbert and notified the parties and their attorneys of a hearing date of June 29, 2001; because defendant was not listed as claimant's attorney, he was not notified of the hearing. (N.T. 4/24/03, vol. I, p. 72.)

4. A full and final decision was not issued until September 6, 2001.

When Shor did not receive his fee, he contacted CompServices Inc. CompServices Inc. then discovered that it had mistakenly sent the fee check to defendant. It immediately sent Shor another check in order to comply with Judge Gilbert's order. Ms. Cruz then contacted defendant, explained the mistake, and asked him to return the money. (N.T. 4/24/03, vol. I, pp. 33-35.) Defendant refused, claiming that he had spent a lot of time and effort trying to settle the case for claimant (*id.* at 35). Then, counsel for plaintiff City of Philadelphia contacted defendant by phone, explained the origin of the $8,000 check, and the mistake by the adjuster. At defendant's request, on September 21, 2001, counsel for plaintiff forwarded defendant all relevant documentation verifying Judge Gilbert's hearing and order, and a copy of the judge's final decision dated September 6, 2001. (N.T. 4/24/03, vol. I, p. 38.) Defendant confirmed receipt of the documentation, however, he again refused to return the money.

## PROCEDURAL POSTURE

Plaintiff, thereafter, filed a complaint in municipal court seeking restitution and attorney's fees and costs from defendant, raising one issue: whether an insurer is entitled to the restitution of money sent to an individual solely as a result of an insurance adjuster's mistake of fact as to who was the payee designated by the order of a workers' compensation judge. Defendant raised a preliminary objection that the municipal court did not have jurisdiction to hear the case. Plaintiff replied. The lower court dismissed defendant's objection. Trial was set for February 5, 2002. Following a hearing, the municipal

court awarded full restitution to plaintiff. Defendant appealed to the court of common pleas.

Plaintiff filed its complaint in the court of common pleas on March 25, 2002. On April 15, 2002, defendant filed preliminary objections, and a motion to dismiss for lack of jurisdiction. On May 15, 2002, plaintiff filed an answer and memorandum of law. On May 29, 2002, defendant's preliminary objections and motion to dismiss were denied and the matter was ordered to remain in common pleas court.

On June 12, 2002, defendant filed an answer to plaintiff's complaint and raised a new matter. Plaintiff filed a response to defendant's new matter on June 27, 2002.

On July 23, 2002, a compulsory arbitration panel heard plaintiff's case for restitution. Defendant's attorney, Simon J. Rosen, Esquire, submitted an "arbitration memorandum of law." The panel found for plaintiff City of Philadelphia and against defendant in the amount of $8,000. Defendant appealed the award of the arbitrators to this court.

After a three-day bench trial on April 24, April 25, and May 12, 2003, this court returned a verdict for plaintiff City of Philadelphia for $8,000, but denied attorney's fees and costs to plaintiff.

On May 19, 2003, defendant filed a motion for post-trial relief for a new trial, and/or a motion for judgment n.o.v.[5] Defendant also filed a "request for court en banc" to hear the post-trial motions. Plaintiff filed a motion for post-trial relief on May 21, 2003, arguing only that it

---

5. In his brief, defendant argued the same issues he now raises in this appeal.

should have been awarded counsel fees and costs under 42 Pa.C.S. §2503.[6] This court, on or about September 26, 2003, denied all post-trial motions. Both parties filed a notice of appeal on October 23, 2003. Statements of matters complained of on appeal were ordered on October 29, 2003, and were filed by counsel within 14 days of the order.

Defendant now argues seven issues before this court, namely that: (1) plaintiff's attorney prejudiced the court by repeatedly mentioning that defendant was unsuccessful at the municipal court and arbitration level; (2) defendant demonstrated a complete affirmative defense to plaintiff's restitution claim, in that he provided value to plaintiff and had no knowledge the fee was mistakenly sent to him; (3) the common pleas court lacked subject matter jurisdiction and the Bureau of Workers' Compensation possessed exclusive subject matter jurisdiction; (4) the verdict was improper due to stare decisis and collateral estoppel because Workers' Compensation Judge Gilbert's 1997 order awarding ongoing attorney's fees to defendant had never been vacated, and even if determined to be vacated, no notice of any subsequent order was ever served on defendant to make the subsequent order valid and binding; (5) the verdict was erroneous because plaintiff failed to exhaust his administrative remedies, to wit, file a review petition before the Bureau of Workers' Compensation prior to instituting the suit against him; (6) the verdict was improper because

_____

6. 42 Pa.C.S. §2503 states that counsel fees may be awarded to plaintiff if a defendant made frivolous bad faith defenses and appeals which had no reasonable possibility of success under the law, but were pursued for the purpose of obstructing and delaying restitution.

plaintiff's claim is barred by the doctrine of unclean hands where plaintiff concealed the compromise and release hearing from defendant, that the settlement was reached, and that his checks were going to be stopped; and (7) it was reversible error to permit former Workers' Compensation Judge Carol Mickey and Workers' Compensation Appeal Board Commissioner Harold Fergus to testify regarding jurisdiction and restitution issues because both issues were outside their scope of expertise (defendant's 1925(b) statement). This court finds all of defendant's claims meritless.

## DISCUSSION

Defendant first argues that this court should grant a new trial because plaintiff repeatedly mentioned during the trial that defendant had been unsuccessful in municipal court and at the arbitration hearing. No relief is due.

When determining whether to grant or deny a request for a new trial, the trial court performs a two-prong analysis. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000). First, the trial court must decide whether one or more mistakes involving factual, legal, or discretionary matters occurred at trial. *Id.* If the court concludes that a mistake or mistakes occurred, it must then determine whether the mistake was a sufficient basis for granting a new trial. *Id.* "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she suffered *[actual] prejudice* from the [alleged] mistake." *Id.* (emphasis added) If the error is harmless, the court will deny a new trial. *Id.* More-

over, any concern that a prejudicial comment or comments may prevent a fair trial in the minds of a jury is lessened, if not eliminated, when a trial judge sits as finder of fact. *Commonwealth v. Stantz,* 353 Pa. Super. 95, 104, 509 A.2d 351, 356 (1986). Finally, absent a clear abuse of discretion by the trial court in its decision to deny a new trial, appellate courts may not interfere with the ruling. *Morrison v. Commonwealth, Department of Public Welfare,* 538 Pa. 122, 133-34, 646 A.2d 565, 570 (1994).

Applying the law to this case, although it was arguably improper for plaintiff to mention that it had previously been successful before an arbitration panel and in municipal court, this court was fully capable of setting aside any reference to past rulings, and rendered a decision based on the merits of the case. The evidence at trial overwhelmingly supported an award to plaintiff, therefore, any improper mention of prior litigation was harmless error, and therefore, no new trial is warranted.

Defendant also argues that the verdict was against the weight of the evidence, contending that he demonstrated a complete affirmative defense to plaintiff's restitution claim, in that he provided value to claimant's settlement, and had no knowledge of, nor did he induce, the mistake that led to his receipt of the disputed funds. This claim must fail.

As both parties agreed, Pennsylvania courts look to the Restatement of Law on Restitution as the source of authority in determining whether a right to restitution exists. *Lucey v. W.C.A.B. (VY-CAL Plastics PMA Group),* 557 Pa. 272, 732 A.2d 1201 (1999). The Restatement reads as follows:

"Restatement (First) Of Restitution §22. Mistake as to payee. A person who has paid money to or for the account of another not intended by him, is entitled to restitution from the payee or from the beneficiary of the payment, unless the payee or beneficiary is protected as a contracting party or bona fide purchaser.

"Comment:

"(a) The rule stated in this section applies where a person . . . is mistaken as to the person to whom or to whose credit he makes the payment. The mistake may arise in a great variety of situations . . . . The payment may be caused by a misdirection of the payor to an agent or by the misunderstanding of an agent . . . . . . .

"Illustrations:

"(3) A tells his bookkeeper to mail a check to B. The bookkeeper misunderstands the direction and mails the check to C. A is entitled to restitution from C." Restatement (First) of Restitution §22 cmt. A, illus. 3 (1937).

Here, the $8,000 attorney fee check was sent to defendant due to a mistake by the adjuster, Angela Cruz of CompServices Inc., whose intention it was to comply with Judge Gilbert's order awarding the fee to Jay E. Shor, Esquire, who represented claimant during all aspects of his compromise and release agreement with the City of Philadelphia. This situation falls squarely within the above-cited Restatement, which entitles plaintiff to restitution.

Nonetheless, defendant cites comment C of the above Restatement that "[r]estitution is not granted if the payee has given or promised value without reason to know of the mistake. Thus if a person enters into a binding contract with another mistaking him for a third and pays

him money in accordance with the conditions of the contract, the payor is not entitled to restitution." Defendant's claim, however, does not fall under the exclusion in comment C. To begin, no contract was entered into between defendant and plaintiff City of Philadelphia. Furthermore, defendant provided no value to the compromise and release settlement between plaintiff and claimant. (4/25/03, vol. I, pp. 30-31.) Defendant was no longer employed as counsel for claimant as of at least February 15, 2001, when he was notified by CompServices Inc. that they had been informed that claimant retained new counsel. (N.T. 4/24/03, vol. I, pp. 33-34.) The last letter sent by defendant on behalf of claimant was in January 19, 2001. (*Id.* at 50.) In fact, claimant had been asking defendant to reach a settlement since immediately after the 1997 claim petition was settled; defendant, however was never able to reach any agreement with plaintiff. (N.T. 4/25/03, vol. II, pp. 169-72.) After February, 2001, defendant had no further conversations with claimant. (*Id.* at 180.) Finally, defendant testified that he disapproved of the compromise and release settlement reached by Attorney Shor, and would have advised claimant not to take the settlement had he been present at the compromise and release hearing. (*Id.* at 152.) Taking into consideration all of the above testimony at trial, this court found that defendant had not, as he claimed, "provided value" to the settlement, and therefore, could not escape his payment of restitution to plaintiff. Because he provided no value to the settlement, it is of no issue whether defendant induced or had knowledge of the mistakenly sent payment.

Defendant next argues that this court lacked subject matter jurisdiction and that the Bureau of Workers' Com-

pensation possessed exclusive subject matter jurisdiction to hear this case. He is wrong.

Again, the only question raised in the plaintiff's complaint was whether an insurer is entitled to restitution of monies sent to an individual solely as a result of an insurance adjuster's mistake of fact as to who was the payee designated by the order of a workers' compensation judge? The subject matter was a claim in equity for restitution, not a Workers' Compensation matter. The attorney's fee was sent to defendant as result of the adjuster's mistake, not pursuant to an order by Workers' Compensation Judge Gilbert. Indeed, at trial, plaintiff presented testimony of two experts in workers' compensation, Commissioner Harold Fergus of the Workers' Compensation Appeal Board, and workers' compensation Attorney Carol Mickey. Commissioner Fergus testified that, in a restitution claim between the City of Philadelphia and an attorney regarding a mistakenly sent attorney fee, the Workers' Compensation Appeal Board would have no jurisdiction. (N.T. 4/24/03, vol. I, p. 87.) Similarly, Attorney Mickey testified that there is no remedy in the Workers' Compensation Act where an adjuster mistakenly sends money to an attorney; the Bureau of Workers' Compensation would not take jurisdiction over the matter. (N.T. 4/25/03, vol. I, pp. 23-24, 27.)[7] More-

---

7. In the case presented before this court, defendant could not raise the defense of "entitlement" under 34 Pa. Code §121.24 (approval of attorney's fees by workers' compensation judge or board) since he has not established entitlement as a matter of law before the Bureau of Workers' Compensation. Indeed, as defendant himself testified, if he wanted to contest the 2001 fee to Attorney Shor, he was mandated to litigate that matter before the Bureau of Workers' Compensation. (N.T. day 2, vol. II, pp. 216-24.) Defendant was aware of the award of

over, defendant testified that he had filed a similar restitution claim in April 1997, contesting attorney's fees that were mistakenly sent to his client's prior counsel; he filed his appeal in municipal court to recover the fee, and therefore, would have appealed to common pleas court if he were not successful in his claim. (4/25/03, vol. II, pp. 228-36.) Defendant's own actions demonstrated that the restitution claim was also properly before this court. The subject matter in this case, restitution, is governed by the Restatement of Law on Restitution, and therefore, the case was properly heard before a court of equity in Philadelphia—the municipal court, and then properly appealed to the court of common pleas. See *Lucey v. W.C.A.B. (VY-CAL Plastics PMA Group)*, 557 Pa. 272, 732 A.2d 1201 (1999) (restitution case heard before court of equity); and *Wilcox v. Evans*, 190 Pa. Super. 166, 153 A.2d 817 (1959) (in Philadelphia County the municipal court possessed equity jurisdiction).[8]

---

attorney's fees shortly after Judge Gilbert's full and final decision on September 6, 2001. He could have appealed the decision claiming his entitlement at that time. (N.T. 4/25/03, vol. I, p. 93; 4/25/03, vol. II, pp. 222-23.) He took no such action because he had no standing to contest the fees to Attorney Shor. (N.T. 4/25/03, vol. I, p. 26.)

8. Defendant further argues that plaintiff was required by law to exhaust his administrative remedies, to wit, to file a review petition before the Bureau of Workers' Compensation prior to instituting the suit against defendant. He believes that plaintiff should have been required to file a petition before Judge Gilbert seeking him to declare his prior order vacated. This claim is absurd because plaintiff does not seek to have Judge Gilbert's order reversed. The judge properly awarded the attorney fee to Mr. Shor. Plaintiff's adjuster simply sent the wrong attorney the fee. Therefore, there would have been no remedy before Judge Gilbert because the order was correct.

Furthermore, defendant's reliance on *Larry Pitt & Associates v. Long*, 716 A.2d 695 (Pa. Commw. 1998), for his argument that plain-

Defendant also maintains that since, in 1997 Judge Gilbert granted him 20 percent of an "outgoing benefit" to claimant, and the order was never vacated or rescinded, he is entitled to the $8,000 payment that was mistakenly sent to him due to stare decisis and collateral estoppel. Nonetheless, he argues, if the order is determined to be vacated, the verdict was still improper because no notice of any subsequent order was ever served on defendant, which he contends was a requirement necessary to make the subsequent order valid and binding on defendant.

---

tiff was required to proceed before the workers' compensation judge is misplaced. In the *Pitt* case, counsel Pitt sought to recover attorney's fees from a claimant who used Pitt's services, then proceeded pro se in gaining workers' compensation benefits before a fee agreement was signed and without presenting a fee agreement to the WCJ (workers' compensation judge) to order. *Larry Pitt & Associates v. Long,* 716 A.2d 695, 697 (Pa. Commw. 1998). Pitt filed suit in numerous forums. The court held that, since there was an appeal pending in regard to the fee dispute before the Workers' Compensation Appeal Board, even though it was not the proper forum for a fee dispute where a client discharges his attorney before the attorney files the fee agreement, the attorney was required to allow the ruling by the board before proceeding before the court of common pleas. *Id.* at 699. The court went on to state that the WCJ and board's authority over fees is limited to those fees submitted to it and approved by it while the attorney-client relationships still exists. *Id.* Again, defendant was aware of the fees awarded to Shor and never took any action before the board. He cannot now attempt to litigate his fee claim of "entitlement" before this court.

Defendant also claimed during trial that he and Shor had entered into an agreement to divide the attorney fee for the compromise and release agreement. (Day 2, vol. II, p. 146.) He did not, however, produce any paperwork or testimony evidencing this agreement. Nonetheless, this would have been a dispute between Attorney Shor and defendant, not defendant and the City of Philadelphia.

Defendant's beliefs are not supported by workers' compensation law.

Again, plaintiff presented expert testimony that no prior order entitled defendant to receive counsel fees on June 29, 2001, to future workers' compensation benefits, even if the new order did not explicitly vacate the 1997 order, and such procedure was, and is, the customary practice of the Workers' Compensation Board. (N.T. 4/24/03, vol. I, pp. 82-86, 110; 4/25/03, vol. I, pp. 20-23.) Attorney Carol Mickey testified that the 1997 compensation case with defendant as counsel, and the 2001 case where Attorney Shor was counsel, were different cases. She stated that the general practice in workers' compensation is a second order rescinds the first order for attorney's fees. (N.T. 4/25/03, vol. I, pp. 20-21.) Also, Commissioner Harold Fergus of the Workers' Compensation Appeal Board testified that, in his opinion, no lawyer would claim that the 1997 fee agreement survived 2001 fee agreement. (N.T. 4/24/03, vol. I, p. 108, pp. 85-90.)[9] Finally, testimony was taken that claimants often hire new counsel to settle their entitlements to benefits won by earlier counsel, and for this to take place, new counsel need only present an attorney fee agreement with the petition to a workers' compensation judge

___

9. Defendant claims that, under Pennsylvania law, an order must be abided by until reversed or vacated, citing *Moore v. W.C.A.B. (Reading Paperboard)*, 676 A.2d 690, 694 (Pa. Commw. 1996) (employer obliged to follow orders until they are reversed). In *Moore,* the court admonished an employer who unilaterally modified then suspended payments to an employee despite an order by a WCJ for higher payments. Here, there was a new order signed by the workers' compensation judge, therefore, the facts of *Moore* are distinguishable from this case.

for approval, and an order will be issued to redirect the attorney fee to new counsel. (N.T. 4/25/03, vol. I, p. 21.) No notice of the new order is required to be sent to prior counsel. (N.T. 4/24/03, vol. I, p. 72; 4/25/03, vol. I, pp. 34-35.)

Defendant also argues that the verdict is improper because plaintiff's claim to restitution is barred by the doctrine of unclean hands. *Tang v. Hwang,* 799 F. Supp. 499 (USDC, E.D. Pa. 1992) (doctrine of "unclean hands," is where a claim is barred if the party seeking affirmative relief is guilty of conduct involving fraud or bad faith directly related to matter in issue that injures the other party and affects the balance of equities between the litigants); *Lucey v. W.C.A.B.,* 557 Pa. 272, 732 A.2d 1201 (1999). He claims that the plaintiff intentionally failed to notify him of the settlement because the city did not want him to jeopardize the settlement by objecting to it; if the settlement went through, it acted to halt all future liability from plaintiff.[10] *John J. Kane Glen Hazel Re-*

---

10. Defendant also claims that if he were notified, he would have protected his counsel fee interest even if claimant no longer wanted him as his attorney, because he possessed a charging lien by operation of law. An attorney is entitled to a charging lien if: "(1) . . . there is a fund in court or otherwise applicable for distribution on equitable principles, (2) . . . the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) . . . it was agreed that counsel look to the fund rather than the client for his compensation, (4) . . . the lien claimed is limited to costs, fees, or other disbursements incurred in the litigation by which the fund was raised, and (5) . . . there are equitable considerations which necessitate the recognition and application of the charging lien." *Recht v. Clairton Urban Redevelopment Authority,* 402 Pa. 599, 608, 168 A.2d 134, 139 (1961). Under the law, defendant does not have a "charging lien." Both experts, Commissioner Harold Fergus and Attorney Carol Mickey, testified that they have never, in their vast experience, heard of a "charg-

*gional Center v. W.C.A.B. (Rust),* 674 A.2d 1165 (Pa. Commw. 1996). Defendant's claim is meritless; the plaintiff City of Philadelphia had no obligation to notify defendant of any hearing.

Defendant received notice that he was no longer the attorney for claimant. (N.T. 4/24/03, vol. I, p. 34.) He was, therefore, also "on notice" that his name would no longer be on any notice of hearing for a compromise and release agreement. Indeed, defendant did not belong at a settlement where he was neither a party nor the attorney for a party. Neither the workers' compensation judge nor plaintiff were required to notify him when he was not a party to the hearing. (N.T. 4/24/03, vol. I, p. 72; 4/25/03, vol. I, p. 35.) There was no wrongdoing by claimant involving fraud or bad faith.

Finally, defendant's last claim is that it was reversible error for the court to permit former Workers' Compensation Judge Carol Mickey and Workers' Compensation Appeal Board Commissioner Harold Fergus to testify regarding jurisdiction and restitution issues, claiming both issues were outside their scope of expertise. This claim is false.

Determining whether a witness may testify as an expert is a matter within the sound discretion of the trial court, whose decision will be reversed only for a clear abuse of discretion. *Flanagan v. Labe,* 547 Pa. 254, 690 A.2d 183 (1997). In order to qualify as an expert in a given field, a witness must possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. *Bennett v. Graham,* 552 Pa.

---

ing lien" being applied to a workers' compensation matter. (N.T. 4/24/03, vol. I, p. 78; 4/25/03, vol. I, p. 38.)

205, 209, 714 A.2d 393, 395 (1998). In Pennsylvania, the standard for the qualification of an expert is a liberal one—if a witness has any reasonable pretension to specialized knowledge on the subject under investigation, he may testify and the weight to be given to his evidence is for the finder of fact. *Whittington v. Episcopal Hosp.*, 768 A.2d 1144 (Pa. Super. 2001); *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). Here, workers' compensation attorney, Carol Mickey, a workers' compensation attorney since 1981, and workers' compensation judge from 1988 to 1995, and Commissioner Fergus, a member of the Workers' Compensation Appeal Board for over 22 years, testified regarding the practice and procedure in workers' compensation cases. Their experience qualified them to testify to these matters before this court, and their testimony aided the court in its decision-making process. There was no error in admitting their testimony.

## CONCLUSION

For all of the above reasons, this court determined that defendant was liable to plaintiff for the $8,000 attorney fee check that was mistakenly sent to him. Judgment for plaintiff should, therefore, stand.